## JOHN L. STODDARD v. CHARLES H. PRESCOTT.

*Certificate of tax-sale—Cloud on title—Consideration.*

1. A cloud on title is created by any instrument which purports by its terms to be a conveyance from the original source of title to an adverse claimant, if extrinsic evidence is needed to show the invalidity of the instrument.

2. A certificate of tax-purchase will cloud title if the deed to be issued thereon would establish presumptive title adversely. And as the fact that the certificates attached to the assessment rolls were not filled out or attached by the proper officer, or that part of the tax had been illegally assessed, could not appear on the face of the deed, evidence of such facts would be inadmissible in defense to an action for the consideration agreed upon for the assignment of such certificate.

3. The assignment of a certificate of tax-purchase that is regular on its face, is a valuable consideration where the certificate is sufficient to cloud the assignee's title.

Error to Bay. (Green, J.) Nov. 12.—Nov. 19.

ASSUMPSIT. Defendant brings error. Affirmed.

*Shepard & Lyon* for appellant.

*John L. Stoddard* for himself. Proceedings for the assessment of a tax which under the law may culminate in the issue of a deed that is prima facie evidence of the regularity of the proceedings, constitute a cloud upon the title to the

property, although there may be an illegality in the proceedings appearing upon their face, which will render them and the deed to be issued void: *Palmer v. Rich* 12 Mich. 414; *Scofield v. City of Lansing* 17 Mich. 437; *M. H. & O. R. R. Co. v. Marquette* 35 Mich. 504; Blackwell on Tax Titles 567; the rule is otherwise only when the statute under which the tax is levied is unconstitutional and void, as in *Detroit v. Martin* 34 Mich. 170; *Curtis v. East Saginaw* 35 Mich. 508; where there is any consideration of value, there can be no question into its sufficiency; parties place their own value on their own purchases, and unless a bargain is rescinded they must pay what they agree to pay: *Kennedy v. Shaw* 43 Mich. 361; *Oakley v. Boorman* 21 Wend. 588; *Johnson v. Titus* 359: 2 Hill 606, 608; *Spann v. Bartzell* 1 Fla. 301 : 46 Am. Dec. 346, 356; 1 Add. on Cont. (Morgan's ed.) §§ 9, 16; 2 Field's Lawyers' Briefs §§ 94, 95; *Davis v. Steiner* 14 Penn. St. 275 : 53 Am. Dec. 547; *Holt v. Robinson* 21 Ala. 106 : 56 Am. Dec. 240; *Brown v. Ray* 10 Ired. L. N. C. 72 : 51 Am. Dec. 379.

CHAMPLIN, J. This action was brought to recover the amount of $300, under the following circumstances : At the annual tax sale of land for delinquent taxes, in the county of Bay, held in May, 1884, the plaintiff bid off certain land belonging to defendant, and received the usual certificate of purchase therefor. Afterward he informed defendant of his purchase, and offered to sell his interest to him for $300. After one or more interviews on the subject the defendant called at plaintiff's office just before six o'clock on the 30th of October, 1884, and wanted to fix the matter up. He said that he felt sure that he had paid his taxes, but had not been able to find his receipts, and that he was about to sell his property, and he did not want any thing of that kind in the way, and that he could better pay for the tax title than to have the thing standing in his way, for it might interfere with his sale, and he asked plaintiff if he would agree to refund a part of the money in case he should find his receipts. He stated distinctly to plaintiff that he understood the tax title was not worth anything, that it was good for nothing, and that he, plaintiff, could not do anything with it; but he thought the best thing for him to do under the circumstances

was to pay up, and he would have the thing all cleared, and there would be nothing in the way of selling the property. Finally he agreed to pay plaintiff $300 for the tax title, with the agreement on the part of the plaintiff to repay to defendant $275, in case he found the tax receipts for the years 1879 and 1880, and $150 if he found the receipts for one year; the particulars of which agreement were embodied in the following paper, which plaintiff drew up, signed, and delivered to defendant, viz. :

"BAY CITY, MICHIGAN, October 30, 1884.

Received of C. H. Prescott $300 for tax title on lots 7, 8, 9, 10, 11, 12, and west 12 and half feet of lots 2, 3, 6 and 13, in Bay City, as per plat of James Fraser's first addition, north of Center street, all in block nine (9) of said plat, for the year 1880 and 1879. If said Prescott shall, after giving notice to me, prove to the satisfaction of the Auditor General that the taxes aforesaid, and for which said property was sold, were duly paid, and the said Auditor General shall for that reason cancel said sale within sixty days from this date, then I agree to repay to said Prescott, on demand, $275. If proof is made as aforesaid of payment of the taxes for one of said years and not both of them, within the time aforesaid, then I agree to repay to said Prescott $150.

J. L. STODDARD."

He also assigned to defendant the tax certificate of purchase and delivered it to defendant, who thereupon wrote a check upon a bank in Bay City for $300, payable to the order of the plaintiff, and delivered it to him. The next morning plaintiff put the check in the bank for collection, and in a day or two it was returned to him protested for non-payment. He at once notified defendant and that he held the check subject to his order, and a few days after he saw defendant and requested an explanation, but none was given; but he admitted that he stopped payment of the check, claiming that he found that he had paid his taxes. He produced no receipts and took no steps to have the certificates canceled. He retained in his possession the agreement signed by plaintiff, and the certificate, and produced them upon the trial at plaintiff's request, and has never paid the $300, or

any part thereof. There is no pretense that plaintiff made any false or fraudulent representations to induce defendant to purchase plaintiff's interest in the tax certificate, or that he did not fully understand the nature and character of the transaction, nor that he had acquired any knowledge or information in regard to the invalidity of the tax certificate after he gave his check that he did not possess before. On the trial his counsel based his sole defense upon the proof contained in his offer, as follows:

"We propose to prove by Mr. Kelly, who was county clerk in 1879 and 1880, that in these years the certificates were not made out and afterwards signed by the chairman and affixed to the roll, but that the chairman signed the certificates in blank and left them with the county clerk, and the county clerk afterwards filled in the writing in the blank over the signature of the chairman of the board of supervisors, and in each of these years sent them to the different assessing officers through the county, and that the certificates of equalization were not attached to the rolls at the time the assessing officers met the board of supervisors at the October session, and after the October session had adjourned, were sent to the different assessing officers at their respective post-office addresses, having previously been signed by the chairman and filled out by the clerk and mailed by him.

And, further, that in each one of these years there was assessed upon the assessment-roll and spread upon the tax-roll of the city, a one mill tax, and that these lands—that the plaintiff obtained this certificate of the tax-sale was for—for the taxes of 1879–80, were sold for the taxes for these respective years for a tax that included a one-mill tax, and we claim that there was no authority in law for levying such a tax; that the provisions of our charter superseded the statute upon that subject, and that there was no authority for levying the taxes, for the reason that we had no primary schools in the city at the time, and no primary school library for the fund to be devoted to, but a public library of Bay City, which was a corporation; and we claim that when the proceedings to raise the tax show upon their face that the tax is invalid, that the tax title acquired through a sale of the property for taxes so levied and assessed is void, and that such a title would not be even a cloud upon the title of the owner of the property."

We think the court very properly excluded the proposed proof. The title which could have been acquired under the certificate would have constituted on its face a presumptive title to the land. Nothing would have appeared upon the face of the deed to apprise any one that the certificates required by the tax law to be attached to the assessment rolls were not filled out and attached by the proper officer, nor would it appear on the face of the deed that a mill tax had been illegally assessed. Every instrument purporting by its terms to convey land from the original source of title, however invalid, creates a cloud upon the title if it requires extrinsic evidence to show its invalidity. *Pixley v. Huggins* 15 Cal. 128 ; *Van Wyck v. Knevals* 106 U. S. 370. There is no doubt that such a title, emanating from the Auditor General, would, if it did not confer an absolute title, cast a cloud upon the defendant's title, and materially affect the market value and salability of his land. This he perfectly understood and sought to remedy by the purchase of the tax certificate. Under these circumstances the sale and assignment of the certificate was a sufficient and valuable consideration for the promise made by him to pay plaintiff $300. As no error appears in the record,

The judgment is affirmed with costs.

The other Justices concurred.