## VANCE *v.* NEWMAN.

### Opinion delivered April 9, 1904.

1. CONTRACT—CONSTRUCTION.—A bond reciting that parties named have purchased a certain lot, for which they have paid $150, and are to make future payments aggregating $350 at certain dates, the last of which was one year from date, and that on the payment of said sums within one year from date the vendors should convey the land to such purchasers, amounts to a contract for the sale of the land, and not merely an option to buy within a certain time. (Page 362.)

2. STATUTE OF FRAUDS—SIGNING.—So far as the statute of frauds is concerned, a contract for the sale of land need not be signed by both parties, it being sufficient if it be signed by the party against whom it is sought to be enforced. (Page 363.)

3. CONTRACT—MUTUALITY.—Where a contract for the sale of land is signed only by the party against whom it is sought to be enforced, it is not invalid for want of mutuality. (Page 363.)

4. SPECIFIC PERFORMANCE—TIME AS ESSENCE OF CONTRACT.—Where a contract for the sale of land stipulated that the purchase money should be paid at certain dates, payment on or before such dates is not essential to entitle the purchaser to enforce specific performance. (Page 363.)

5. SAME—WHEN ENFORCED.—The fact that after the balance of the purchase money of land became due, and before it was tendered by the vendee, the value of the land was greatly increased, does not render it inequitable to decree specific performance of the contract, especially where the vendor made no offer to rescind or to return so much of the consideration as had been paid. (Page 364.)

6. SAME—TENDER OF TAXES.—A vendee asking specific performance of the contract of sale must tender the taxes accruing subsequent to the purchase which have been paid by the vendor, in order to avoid being taxed with the costs of the suit. (Page 365.)

Appeal from Boone Chancery Court.

ELBRIDGE G. MITCHELL, Judge.

Action by A. J. Vance against John R. Newman and others. Judgment for defendants, from which plaintiff has appealed. Reversed.

STATEMENT BY THE COURT.

The plaintiff in November, 1900, brought an action for the specific performance of a contract in reference to land owned by defendants, which contract had for valuable consideration been duly assigned to plaintiff before the commencement of the action.

The contract is as follows, towit:

"BOND FOR TITLE.

"*Know All Men by These Presents:*

"That we, Elizabeth Newman, a single woman, and Mary M. Newman, and John R. Newman, her husband, in the county of Boone, state of Arkansas, are held and firmly bound to T. R. Cave, of Westmoreland, Kansas, and E. L. Clendenin, of Harrison, in the county of Boone, in the state of Arkansas, in the sum of $1,000, to be paid to the said T. R. Cave and E. L. Clendenin, to which payment we bind ourselves and our heirs, executors and administrators, firmly by these presents. Dated this 10th day of August, 1899.

"The condition of this obligation is such that, whereas said T. R. Cave and E. L. Clendenin have purchased from the said Newman lot No. 7, in block No. 4, in the old town of Harrison, Arkansas, and have paid thereon $150, and are to make future payments as follows, viz: $100 on November 10, 1899; $125 on February 10, 1900, and $125 on August 10, 1900. If the said Elizabeth Newman, Mary M. Newman and J. R. Newman, upon the payment of said $350 and interest by the said T. R. Cave and E. L. Clendenin within one year from the date hereof, shall convey to said T. R. Cave and E. L. Clendenin, and his heirs forever, a certain tract or parcel of land, with the buildings thereon, situated in Harrison, Boone county, Arkansas, and described as follows: Lot No. seven (7), in block No. four (4), in the old or original town of Harrison, Arkansas, according to the plat and survey of said town by M. LaRue Harrison, on file in the county clerk's office of Boone county, Arkansas, by a warranty deed in common form, duly executed and acknowledged (the premises then being in good condition as they now are, necessary decay and deterioration excepted), then this deed shall be void. * *

"ELIZABETH NEWMAN,
"MARY M. NEWMAN,
"J. R. NEWMAN."

Defendants filed their answer, and for defense set up, first, that the contract sued on was only an option, and only intended as such; second, that the contract was unilateral, signed only by the defendants, and could not be enforced for want of mutuality; third, that time was of the essence of the contract, and that plaintiff, having failed to perform or offer to perform within the time allowed, had shown no excuse for such failure, and was not entitled to the relief prayed.

On the hearing, the court found in favor of defendants to the extent that he refused to order a specific performance of the contract, but ordered that defendants should return the money paid by plaintiff on purchase price, and gave judgment therefor. Plaintiff appealed.

*G. J. Crump,* for appellant.

The power of chancery courts to relieve against mistakes of law is a doctrine grounded upon exceptions, rather than rules.

1 Perry, Trusts, § 184; 13 Ark. 135; 12 Pet. 55. An instrument actually expressing on its face the intent and meaning of the parties, the fact that they thought it a mortgage, when in fact it was a conditional sale, does not change its character or effect. 56 Ark. 320; 49 Ark. 425; 46 Ark. 107. One cannot retain the benefit of a contract and at the same time repudiate its burdens. 17 C. C. A. 38; 40 Ark. 382. The law does not favor forfeitures, and will sustain one only on clear and satisfactory evidence. 30 Ark. 556; 44 C. C. A. 55; 61 Fed. 705.

*J. W. Story,* for appellees.

The vendee under a title bond is the equitable owner of the land, and the vendor holds the legal title as security for the purchase money. 52 Ark. 381; 29 Ark. 358. There can be no mortgage where there is no property to mortgage or debt to secure. 37 Ark. 312. A bond for title does not convey title. 47 Ark. 531; 39 Ark. 363. To ascertain the true intent of the parties, courts are not limited to the terms of the written contract, but will consider all the circumstances connected with it. 13 Ark. 112; 7 Ark. 505; 5 Ark. 321; 52 Ark. 42; 54 Ark. 6; 57 Ark. 65. There can be no specific performance of the contract. 4 Ark. 251; 23 Ark. 708; 19 Ark. 52; 87 Ky. 91; 68 Ark. 276; 30 Ark. 186; 38 Ark. 174; 11 Ark. 733; Bispham, Eq. § § 366-7; Lawson, Cont. § 372; 3 Del. Ch. 189; 171 Ill. 642; 21 L. R. A. 131; Pomeroy, Contr. § § 162-165; 49 N. H. 444; 104 Mass. 412; 58 Mich. 576. Time was of the essence of the contract. 24 N. E. 543; 30 N. E. 373; 21 S. W. 970; Bispham, Eq. § 377. There was no performance of the contract. 33 Ark. 340. The contract was an option, and not a sale. 13 S. W. 935; 44 Ark. 216.

RIDDICK, J. (after stating the facts). This is an action for specific performance. The first question in the case is whether the bond for title set out in the statement of facts amounts to a contract for a sale of the land, or only an option giving the assignors of plaintiff the right to buy at the price named within the time specified in the contract. The bond recites that "T. R. Cave and E. L. Clendenin have purchased from the said Newmans lot No. 7, in block No. 4, in the old town of Harrison, Arkansas, and have paid thereon $150, and are to make future payments

as follows: $100 on November 10, 1899; $125 on February 10, 1900, and $125 on August 10, 1900." There is nothing here to show that the $150 paid on the land was paid as an option. On the contrary, the language is that the parties have purchased the lot and paid thereon the sum named. This was, we think, a part payment on the purchase of the land, and there is nothing in the remainder of the contract to show that only an option was intended. The fact that one of the parties may have thought that the legal effect of this bond was only to give plaintiff an option to purchase within a year cannot alter the law or the bond, for he does not claim that he was led to adopt this view by fraud or representation of plaintiff.

Again, it is said that only the defendants signed the contract, and that its language shows that it was essential that the payment of the price should have been made within the time named in the contract. But the language of the contract shows that it was intended to be mutually binding on both parties. It recites the fact of the purchase, and that the vendees have paid a certain amount on the land, and that they are to make certain other payments. The only reason for saying that there was no mutuality in the contract is the fact that the contract was not signed by the assignors of plaintiff as well as by the defendants. With this exception the contract is complete in every respect, containing the names of the parties, a description of the property sold, and the price to be paid. After the contract was signed by defendants, it was accepted by the assignors of plaintiff, who thereupon paid nearly a third of the purchase price, thus making the land itself a sufficient security for the payment of the remainder due. Under these circumstances it is well settled that the signing of the contract by the defendants takes the case out of the statute of frauds, at least so far as defendants are concerned, and that the contention that there is a want of mutuality in the contract sufficient to defeat the action cannot be sustained. _Slater_ v. _Smith,_ 117 Mass. 96; Pomeroy on Contracts (2d. Ed.), § 75; _Id._ § 170, and cases cited.

We see nothing in the language of the contract that shows that it was essential that the payment of the purchase price should be made on or before the dates named in the contract. As a rule, time is not ordinarily essential in equity, and this is specially

true, says Mr. Pomeroy, of promises to pay money. "A default in the payment at the day appointed, unless the delay be from such a cause or be continued so unreasonably long as to be ground for rescission, will always be relieved; in other words, the mere suffering the pay-day to pass will not preclude the party from enforcing the contract. The reason is that, by a payment of the principal and interest for the time which has elapsed, equity considers the creditor party as fully compensated." Pomeroy, Contracts, § 374; *Dynan* v. *McCulloch,* 46 N. J. Eq. 11, 18 Atl. 822.

But it is said that after the date when the price became due, and before plaintiff offered to pay, the value of the land had greatly increased, so that it would be inequitable to decree a specific performance under such circumstances. The purchase money became due on 10th day of August, and was tendered in full with interest on the 30th day of the same month. In the meantime the evidence does tend to show that, by reason of the fact that a railroad company had agreed to construct a railroad to Harrison, the value of the lot had increased from $500 to $700. This circumstance has raised in my mind some doubt as to whether the relief should be granted after such a change in value. But plaintiff had already paid nearly a third of the purchase money, and it would be inequitable to permit defendants to hold this money and the land also. It was said in a recent case that "where a contract has been partially performed, and one of the parties makes default, the other has a choice of remedies. He may rescind, or he may affirm the contract, but he cannot do both. If he would rescind it, he must immediately return whatever of value he has received under it, and then he may defend against an action for specific performance." *German Savings Inst.* v. *De La Vergne Refrigerator Mach. Co.,* 17 C. C. A. 34, s. c. 70 Fed. 146. Now, in this case the defendants gave the plaintiff no notice that they would rescind the contract unless payment was promptly made, and they made no offer to return the part of the purchase money that had been paid. But, treating the contract as an option only, they sold the lot to other parties for $425, a less price than plaintiff agreed to pay, and did this after plaintiff had tendered the balance due on the land. These subsequent purchasers had full notice of the rights of

plaintiff, and have no greater rights than the vendors in whose shoes they stand. The price at which defendants made this last sale tends to show that the increase in value had not been great. As plaintiff had paid nearly a third of the purchase price, and as the delay in making the tender of the remainder due was not great, we are of the opinion in the whole case that the equities are in favor of the plaintiff, and that the relief prayed should have been granted.

The evidence does not show whether plaintiff, in addition to the remainder of the purchase price and interest, tendered also the taxes which defendants say that they paid on the land subsequent to the contract of sale. After the date of that contract equity regards the land as belonging to plaintiff, and the purchase price as a debt due the defendants. Plaintiff should therefore pay the taxes accruing subsequent to the purchase. If he failed to tender the taxes, this might justify the court in taxing him with some, if not all, the costs in the action, but as we do not know the facts in reference to the taxes, we are not able to determine whether plaintiff should be taxed with a part of the costs or not. The judgment of the circuit court will therefore be reversed, and the case remanded, with an order that, upon payment in court of the purchase money, taxes, and interest, a decree for specific performance be rendered, with such order as to costs as to the court may seem just and equitable.