Board of Directors of St. Francis Levee District v. Cotton-wood Lumber Company.

Opinion delivered May 11, 1908.

Sale of land—Quitclaim deed.—The vendor in a quitclaim deed, in the absence of fraud, is not liable to his vendee because his title failed.

Appeal from Lee Circuit Court; *Hance N. Hutton,* Judge; reversed.

### STATEMENT BY THE COURT.

The appellee took from appellant a quitclaim deed in which appellant, for the consideration of $1,440.66, "granted, remised and quitclaimed" unto appellee "all the right, title and interest of appellant to certain lands in Lee County." The deed was executed on the 15th day of June, 1899. After the delivery of the deed it was ascertained that 320 acres of the land described in the deed were in the river, and therefore practically not in existence. As early as July 15, 1899, the secretary of the board wrote to appellant as follows:

"I have been informed that the land sold you is all in the river. We were not aware of the fact at the time that this was true, as we went by the plats in our office, which were made some years ago. We will state, however, that we will make a refund of the amount paid as soon as we can ascertain the exact status of affairs." Signed, "H. R. McVeigh, Secretary."

In March, 1907, Mr. H. R. McVeigh wrote to the attorney of appellant a letter in which he says: "I remember very well making the sale to the Cottonwood Lumber Company as stated by Mr. Pretorious in his statement of the case. Also that some of the land was found to be in the river, and suppose copy of

the letter purporting to be from me is correct, as at that time, viz., the time of writing it, it was the custom to make refund where it was shown the Levee Board had no title whatever, or lands were not in existence. In some manner the matter ran on until Mr. Driver went out of office. I then brought the matter to the attention of Mr. Killough, his sucessor, who declined to make any refund, holding that, as we only gave a quitclaim, we were not in any way bound for the lands not in existence. At the 1902 annual meeting of the board Mr. Pretorious presented the matter to the board, and it was by the board referred to the advisory committee. They seem to have done nothing with it; at least, I find nothing in the minutes of that committee to show anything done by it as to this claim."

On May 3, 1905, the appellee sued the appellant, alleging that appellant sold appellee the lands descibed in the deed of June 15, 1899, and that it was found that 320 acres of the land were in the river. It was further alleged that "it was agreed between the parties that the amount paid for such lands as were in the river should be refunded; that the matter was referred to the executive committee of said board (levee board) at its meeting in 1902, but said committee has never taken up the matter, and the money remains unpaid."

Wherefore appellee "prayed for judgment in the sum of $320, the price of the land."

The appellant answered, denying the allegations of the complaint, and set up the statute of limitations of five years. Appellant also reserved in its answer a general demurrer to the complaint, which was not passed on. The cause was by consent tried by the court sitting as a jury.

The appellee introduced one William Pretorious, who testified as follows:

"I am president of the Cottonwood Lumber Company, and was such president at the time the lands involved in this action were sold to us by the St. Francis Levee District. The letter introduced in evidence, dated July 15, 1899, was received by me. The lands were not in existence at the time of the making of the deed. Mr. Edward Fritz went down and surveyed the lands soon after the purchase, and found the lands sued for were in the river. The claim was sent in, and the matter rocked

along until the board sent its engineers down and had the lands surveyed. They also reported that the lands were not in existence, and the board said they would fix the matter up as soon as there was money in the treasury. The board at a meeting did not agree to do so, but the secretary promised to do it. It went on from time to time till the secretary called for a quitclaim from the Cottonwood Lumber Company, which was sent them, they agreeing that they would refund the money out of the taxes of 1900. Then in 1901 Mr. Killough was elected president, and he said, as this matter was under the administration of Mr. Driver, he would have nothing to do with it, but would refer it to the next meeting of the board. I attended the next meeting of the board, which was the 14th day of May, 1902, and stated the whole case to the board, and on motion the matter was referred to the advisory committee, with directions to investigate and with power to act, which, however, they failed to do. I would see one or other of the committee from time to time, and they would promise that they would take the matter up at their next meeting. I delayed bringing this suit, depending upon these promises from time to time, and feeling satisfied the matter would be attended to some day, until we were compelled to bring suit, which was done within three years from the date of reference to the advisory committee."

The appellant objected separately to that part of the testimony of the witness, Pretorious, which details the agreement by any officer of the board, or to any letters written to the secretary, and that part which details the fact of the board referring the matter to the advisory committee, or to the statements of members of the advisory committee, or the fact that the said committee delayed action in the matter, or that appellee depended on such statements in delaying to bring its suit.

The court overruled the objections, and appellant excepted. The court also, over the objection of appellant, allowed the letters written by McVeigh to be introduced as evidence.

Appellant asked the court to declare the law as follows:

"1. The court declares the law to be that the statute of limitations in this case began to run from the date of the execution of the deed put in evidence.

"2. The court declares the law to be that there was no liability against defendant by reason of its quitclaim deed to refund the purchase price of the lands in question in this action.

"3. The court declares the law to be that neither the letters of H. R. McVeigh put in evidence, nor the verbal agreement of the said H. R. McVeigh, created any liability against defendant to refund the purchase money of the lands in question."

The court refused to so declare, and rendered judgment in favor of appellee for $306. Appellant duly prosecutes this appeal.

*H. F. Roleson,* for appellant.

1. The statute of limitations began to run from the date of the deed.

2. There was only a quitclaim deed, no warranty of any kind, and hence no liability.

3. Neither the letters of the secretary, nor his verbal agreement created any liability to refund the purchase money. They could not bind the board.

*W. A. Compton,* for appellee.

1. Ordinarily, a quitclaim deed does not support a recovery of purchase money, but there was a further contract which bound the board.

2. McVeigh's testimony was competent; he was an officer charged with the duty of selling land. Besides, the board afterwards recognized its liability.

3. The statute did not commence to run until the board refused to refund.

Wood, J., (after stating the facts.) In the absence of fraud or covenants of title, a vendor of land is not liable to the vendee for the purchase money because the title failed. In such case the vendee voluntarily parts with his money for only such title as the vendor has. If he has none, the vendee gets none, and is without recourse. Such is the contract between vendor and vendee in a purely quitclaim deed. *Gouverneur* v. *Elmendorf,* 5 Johns. Ch. 79 (Kent.) ; *Stoddard* v. *Prescott,* 58 Mich. 542; *Inhabitants of Barkhamsted* v. *Case.* 5 Conn. 528; *Clark* v. *Sigourney,* 17 Conn. 511; *Gates* v. *Winslow,* 1 Mass. 65; *Peters* v.

*Bowman,* 98 U. S. 56; *Whitmore.* v. *Farrington,* 76 N. Y. 452; *Thorkildsen* v. *Carpenter,* 120 Mich. 419; *Gibson* v. *Richart,* 83 Ind. 313; *Porter* v. *Cook,* 114 Wis. 60.   See also *Diggs* v. *Kirby,* 40 Ark. 420.

The secretary was without authority to bind the board by any promise he might have made.   The board made no promise, and the record fails to show a cause of action.

Reversed and remanded for new trial.