Ritter *v*. Board of Directors of St. Francis Levee District.

## Opinion delivered April 2, 1917.

1. Levee districts—deeds to land.—Under the conveyance to the levee district in Act 1893, p. 172, the levee district took only the title the State had, and could itself convey only such title.
2. Levee districts—authority of board.—The Board of Directors of the St. Francis Levee District has only such powers and authority as is expressly conveyed by statute or by necessary implication.
3. Levee districts—powers of board.—Where the statutes confer only special powers on a levee board, they can be exercised only in the manner and to the extent prescribed by the statute.
4. Levee district—powers of board and president—conveyances.—The president of the Board of Commissioners of a levee district has no more power under Act 1893, p. 172, than the secretary, in making conveyances.

5. LEVEE DISTRICTS—AUTHORITY OF BOARD—CONVEYANCES.—Although the president of the Board of Commissioners of a levee district has, under Act 1893, p. 172, authority to make a deed, he can not make covenants of warranty nor agree to refund the purchase price if title failed.

6. LEVEE DISTRICTS—CONVEYANCE OF LAND—REFUND.—Where the deed of a levee district contained warranties not authorized to be made, an agreement to refund the price if title failed will require a new consideration to bind the district, being independent of the main transaction.

Appeal from Craighead Chancery Court; *Charles D. Frierson*, Chancellor; affirmed.

*Lamb, Turney & Sloan*, for appellants.

1. The evidence justified the reformation of the deeds. There was a contract for a fee simple title and warranty deeds. There was a mutual mistake which a court of equity should correct. 98 Ark. 23; 51 *Id.* 390; 13 *Id.* 129; 28 L. R. A. (N. S.) 785, and notes; Pomeroy, Eq. Jur., § § 843-5; 49 Ark. 425; 46 *Id.* 167.

2. The levee board had the power and right to execute warranty deeds. Acts 1893, p. 172; 79 Ark. 14. The president had the right to execute the conveyances and the board was bound when the title failed. 79 Ark. 14; 47 *Id.* 269; 81 *Id.* 244; 58 *Id.* 270; 61 *Id.* 402; 81 *Id.* 143; 96 U. S. 341; 93 *Id.* 490; 67 Ark. 236.

3. The action is not barred. 59 Ark. 629; 86 Fed. 251; 95 Ark. 438.

*L. C. Going* and *Hughes & Hughes*, for appellees.

1. The president of the board had no authority to make warranty deeds. Acts 1893, p. 172; 93 Ark. 496-7; 82 *Id.* 531; 81 *Id.* 244; 86 *Id.* 221.

2. The deeds are only quitclaims. 59 Ark. 299; 121 Ill. 130; 18 Iowa, 12; 59 Me. 157; 46 *Id.* 152; 82 Mass. 332; 104 *Id.* 249; 150 *Id.* 171; 22 N. E. 888; 35 W. Va. 155. Reformation should be denied. 43 N. J. Eq. 377; 113 N. C. 123; 18 S. E. 165.

3. There was no mistake. 46 Ark. 167; 49 *Id.* 425; 56 *Id.* 320; 171 N. Y. 451; 23 N. E. 3; 16 Ill. App. 368.

If so, it was one of law. 159 Pa. St. 184; 28 Atl. 219; 50 *Id.* 673; 29 Barb. 697; Kerron, Fraud & Mistake, 428.

4. Appellant is barred. 32 Ark. 714; 65 *Id.* 103; 74 *Id.* 350; 33 *Id.* 593, 597-8, etc.

5. The title was in the U. S.   47 Ark. 351. Laches are imputable to plaintiffs. 120 Ark. 105; 189 S. W. 654; 83 Ark. 385. The decree is correct.

McCulloch, C. J. Appellants purchased from the board of directors of St. Francis Leveee District on April 4, 1906, certain large tracts of land situated in Mississippi and Poinsett counties, and the president of said levee district executed to appellants on that date two deeds conveying to appellants and their heirs and assigns forever "all of the right, title and interest of said body politic and corporate in and to" the real estate described. The deeds recited the consideration to be paid in cash. The lands described in the deed were unsurveyed swamp lands which had never been patented to the State by the United States Government, and it is conceded in the present litigation that the levee district had no title to or interest in the land to convey, but that the title was still held by the United States.

This action was instituted by appellants against said levee district on July 16, 1915, in the chancery court asking for a reformation of said deed in order to incorporate therein clauses warranting the title to the lands attempted to be conveyed and to recover upon the broken covenants of warranty thus incorporated the total sum of $35,186.67, which is the amount of the purchase price of the lands and interest thereon and the taxes, State, county and levee taxes, paid out.

It is alleged in the complaint that at the time of the purchase the president of the levee board agreed to incorporate in the deeds full covenants of warranty of title, and that when the deeds were prepared special clauses were inserted warranting the title, but, either by mistake or by design on the part of the president, the said clauses were omitted from the deeds at the time

they were executed.  It is further alleged in the complaint that on February 12, 1909, appellants first ascertained that the deeds delivered to them by the president of the levee district were only quitclaims and contained no covenants of warranty and that said president upon their request executed to them an instrument of writing reciting the terms of said purchase and undertaking on the part of the levee board, that in the event title to said lands, or any part thereof, should fail or be found not to have been in the levee district at the time of said conveyances, the levee district should refund to appellants the purchase price so paid, together with interest and all taxes paid out on the lands.  Appellee in its answer denied that there was any agreement with appellants to execute deeds containing covenants of warranty or that there was any error or mistake in the execution of the deeds, and the answer also pleaded lack of authority on the part of the president to enter into any such agreement.  The answer also contains the plea of the statute of limitations.  The chancery court denied the relief prayed for, and entered a decree dismissing the complaint for want of equity, from which decree an appeal has been duly prosecuted to this court.

There is a conflict in the testimony on the issue of whether there was any mistake in the form of the deeds executed by the president of the levee board and as to the agreement concerning the same, but we pass that question and proceed to determine the next one presented in order, whether or not the president of the levee board is clothed with legal authority in conveying the lands of the district to enter into covenants of warranty of title.  The levee board derived title to all of its lands (except those purchased at its own foreclosure sales) from the State under a statute which went into effect March 29, 1893, which also prescribes the terms and method of sale by the levee board.  Acts of 1893, page 172.  The preamble of that statute reads as follows:

"That for the purpose of assisting the citizens of the State to build and maintain a levee along the St. Francis front in this State, and in consideration of the general good of the State; that all the lands of this State lying within said levee district except the sixteenth section school lands, and all the right or interest the State has or may have within the next five years, by reason of forfeiture for taxes or to any lands within said levee district except said sixteenth section school lands, is hereby conveyed to said levee district under the following restrictions and limitations."

Section 1 of the act provides that "said levee district represented by its board of directors shall make a descriptive map of said lands, showing the location and character of same. That lands shall be graded into first, second and third grades, with reference to their relative elevation and timber, and a description of the land and timber given. The said levee district may sell said lands for the minimum prices of $2.50, $1.50 and 50 cents per acre as to grade," and that "the treasurer of the levee board of said district, upon the receipt of payment of any part or parcel of said lands, shall certify the same to the president of said board, who shall execute a deed in the name of said corporation to the purchaser of said lands, the money arising from such sales or issuance of bonds to be applied solely to the construction and maintenance of the levee of said levee district." In a subsequent section it is provided that the president of the levee board shall make a bond to the State in the sum of $50,000 "conditioned upon the faithful and honest appropriation of the proceeds of the aforesaid lands to the building and maintaining the levee of said district."

(1) It is seen from the terms of this statute that no particular lands were conveyed by the State, but that "all the right or interest the State has or may have within the next five years" in any lands, except said sixteenth section school lands, was transferred to the levee district, and it necessarily follows that there was no

authority conferred upon the levee district to undertake to convey anything more than the interest of the State which was thus transferred. The president of the district was authorized to execute a deed, but that authority could extend no further than the execution of an instrument conveying the interest which the district had received from the State. A covenant of warranty embraced in a deed is not a part of the conveyance itself, and the authority to execute a deed does not carry with it authority to enter into covenants of warranty.

(2) The board of directors St. Francis Levee District is a *quasi*-public corporation, a sub-agency of the State, and its officers are clothed with only such authority as is expressly conferred by statute or by necessary implication. *Carson* v. *St. Francis Levee District,* 59 Ark. 513; *Altheimer* v. *Board of Directors of Plum Bayou Levee District,* 79 Ark. 229.

(3-6) The officers of the State in dealing with lands of the State are not clothed with any greater authority than that of conveying the State's interest in the lands it holds, and there is no language found in the act now under consideration which manifests an intention on the part of the Legislature to confer any other or greater authority on the president of the levee district. Where special authority is conferred by statute it must be exercised only in the manner and to the extent prescribed. It is insisted that the decision of this court in the case of *Board of Directors St. Francis Levee District* v. *Myers,* 79 Ark. 14, leads to the conclusion that there was authority on the part of the president to warrant the title of lands which were attempted to be conveyed. The decision on that question was, however, expressly pretermitted in the opinion. In that case there was a special clause in the deed whereby the levee district undertook to refund the purchase price upon failure of title to the lands conveyed, and it was said in the opinion that even if there was no power on the part of the president to bind the district by express

covenants of warranty of title, yet the district having received the funds pursuant to the terms of that contract were bound to refund them in the event of the failure of title. The decision was based entirely on the doctrine of estoppel, presumably on the ground that the levee board itself had either authorized the execution of the contract or had accepted the proceeds of the sale with knowledge of its execution. This is made clearer by the opinion in the later case of *St. Francis Levee District* v. *Cottonwood Lumber Co.*, 86 Ark. 221, where it was held that the district was not bound by the unauthorized promise of the secretary of the board to refund the proceeds of the sale of lands where the title failed. The statute in this respect confers no greater authority upon the president than it does upon the secretary. It provides that the funds shall be paid to the treasurer and that the president "shall execute a deed in the name of said corporation to the purchaser of said lands." The authority to execute a deed, as we have already said, not embracing the authority to enter into a covenant of warranty, the president was without power to enter into a special contract to refund the money, but the effect of the decision in the two cases just referred to is that where the levee district, through its board of directors, received the funds with knowledge of the contract to refund in the event of failure of title it is estopped to dispute the authority to enter into the contract. Now, in the present case it is shown affirmatively that there was no knowledge on the part of the levee board of any special contract being entered into with respect to refund of the money. On the contrary, it appears in the report of the secretary to the board of directors that the title to the lands was in a state of doubt and that the district had, by the sale, gotten rid of lands to which the title was uncertain. The special contract alleged to have been entered into later by the president with appellant does not appear to have been made by the authority of the board, and in addition it is essential

that it should have been based upon an independent consideration in order to bind the district, for the reason that it was not a part of the original transaction.

It is unnecessary to discuss the further question presented concerning the statute of limitations and of laches on the part of appellants for the reason that we have reached the conclusion that there was no authority on the part of the president to warrant the title to the land attempted to be conveyed, or to enter into the special contract with respect to refunding the proceeds of the sale.

The decree of the chancery court is, therefore, affirmed.