MOBERLY, COMMISSIONER, v. BLACKSHARE.

4-6270                                              149 S. W. 2d 557

Opinion delivered April 7, 1941.

196

*Frierson & Frierson,* for appellant.

*Verlin E. Upton* and *Zal B. Harrison,* for appellees.

McHANEY, J. On January 30, 1925, appellee, J. T. Blackshare, and wife executed their promissory note for $2,000 secured by a mortgage on fractional north half southeast quarter section 14, 22 north, 7 east, Clay county, Arkansas, to E. D. Huffman. Said note was not paid at maturity, taxes became delinquent, both general and drainage, and insurance premiums were not paid, as required by the mortgage. The note and mortgage were in due course sold and assigned to Bank of Gerald in Missouri, and it is now in the hands of appellant, Commissioner of Finance of the state of Missouri for liquidation. The firm of Linke & Hoffman at all times represented as agents the mortgagee and his assignee, the Bank of Gerald. Said firm attempted to get the mortgagors to pay the taxes, assessments and mortgage indebtedness, and caused foreclosure proceedings to be instituted, whereupon the mortgagors, on February 8, 1935, executed and delivered their deed to the property to Ellen N. AufderHeide, for the mortgagees, and the foreclosure suit was thereupon dismissed. The mortgaged property became delinquent for the drainage district taxes for 1930 in the Central Clay Drainage District, and in a foreclosure proceeding by the drainage district, the land was condemned and ordered sold and was sold to the district on November 22, 1932, for the taxes of 1930. Title thereto remained in the district until January 9, 1936, when it sold and conveyed same

to appellee, J. L. Blackshare, who took possession thereof and still remains in possession. He paid the district $185.12 for his deed to same.

Appellants brought this action as one for unlawful detainer in the circuit court on January 7, 1937, against J. T. and J. S. Blackshare. Later, on motion of J. T. Blackshare, it was discovered that there was no such person as J. S. Blackshare, and his name was dropped from the action, and J. T. Blackshare answered with a general denial. Later still, appellants discovered that J. L. Blackshare, father of J. T., was living on the place and was claiming title by reason of an unrecorded drainage district deed. He was made a party and the complaint was amended so as to allege that J. T. was a tenant of appellants, and that he executed a deed to his father, J. L., which only assigned his right as tenant, and that due to the fact J. L. was a tenant at the time he purchased from the drainage district and that he was in privity of blood and estate with his son, J. T., appellants were entitled to have the drainage district deed canceled or treated as a redemption or to have J. L. held as a trustee under said deed, and they offered to repay his outlay for said deed, with interest and costs. Other allegations of fraud were made. They prayed the appointment of a receiver to collect the rents, the cancellation of the drainage district deed and that their title be quieted. By consent the case was transferred to equity. Appellees answered with a general denial. Trial resulted in a decree dismissing the complaint for want of equity and this appeal followed.

For a reversal of this decree appellants make two contentions: 1st, that the privity between the father and son estops J. L. Blackshare from asserting his drainage district title against them; and, 2nd, that they had a binding contract with said district that the lands should not be sold to a third person.

1. It is true, as appellants point out and as shown by stipulation, that the appellees had owned the land in controversy jointly, then separately and finally J. T. became the owner and mortgaged same, which mortgage

was held by appellants. This mortgage was dated January 30, 1925, and due November 30, 1929, with 7 per cent. interest. It was not paid at maturity or at all. On February 8, 1935, J. T. conveyed same by quitclaim deed to Ellen N. AufderHeide who was the nominee of Linke & Hoffman, agents of appellants, and on September 23, 1936, she conveyed by quitclaim to the Bank of Gerald. The foreclosure action was dismissed. It was agreed that J. T. remain in possession and farm the land, and that he could repurchase and appellants aided him or tried to help him borrow the money to repurchase, but to no avail. It is also true that neither a tenant nor a mortgagor can dispute the title of the landlord or mortgagee so long as they remain in possession. This proposition is not disputed by appellees. But there is here no such question. J. T. Blackshare did not purchase the drainage district title and J. L. Blackshare was never a tenant of appellants or a mortgagor in possession. We find no evidence of fraud or of a scheme or conspiracy between them to defeat the lien of the mortgage or to acquire title adverse to the landlord, further than the fact of the relationship between them. The complaint alleged a conveyance from son to father, but there was no evidence to establish the allegation. J. L. did not acquire possession as a tenant through his son, but took possession under his deed from the drainage district. Appellants knew the land had forfeited for the nonpayment of the drainage district taxes, that it had been sold to the district, and that the period of redemption was two years. They knew these facts all the time and their agents, Linke & Hoffman, wrote numerous letters to J. T. Blackshare during 1933 in an effort to get him to pay the taxes. The land was also forfeited and sold for state and county taxes, to the knowledge of appellants. Failing to get any cooperation from J. T., none of their letters being answered, foreclosure action was begun against him on November 26, 1934, which resulted in his quitclaim deed to AufderHeide of February 5, 1935, and a dismissal of the action. It was nearly a year later when J. L. Blackshare purchased from the drainage district, January 9, 1936. We

think the failure of appellants to pay the taxes, knowing that this mortgagor had not done so, or to redeem from the sale to the drainage district during the period of redemption, or to purchase from the district during the more than 13 months title remained in the district after the expiration of the period of redemption, evidences gross negligence or an intent to abandon any claim to same on the part of appellants.

Nor do we think the evidence sufficient to overcome the finding of the trial court that there was no collusion between the Blackshares. It is said they went to the drainage district office together at the time J. L. bought its title and that he had a deed from his son, and there was some evidence to this effect. It was denied by both of them and we are unwilling to say that the finding of the court is against the weight of the evidence.

2. As to this contention, that appellants had a binding contract with the district not to sell this land to a third person, we are of the opinion it cannot be sustained and that it is not ruled by the case of *Blanton* v. *Jonesboro B. & L. Assn.*, 176 Ark. 315, 3 S. W. 2d 964. The court there said: "The record shows that Blanton purchased the lot with notice of the outstanding contract made by the secretary of the drainage district with Ray. Indeed, this is how Blanton came to purchase the lot. The secretary of the drainage district told him about the letters he had written to Ray, and Blanton persuaded Causey to ask the board of directors of the drainage district to execute a deed to Blanton, and the latter, having notice of the contract of Ray, acquired no better title to the lot than the drainage district in whose shoes he stands."

Assuming that there was here an oral contract between the district and Miss AufderHeide to give her the prior right to purchase said land, there is no showing that J. L. Blackshare had any notice of such arrangement, and he was therefore a purchaser for value without notice. Having held the title for more than two years after the period of redemption had expired, the district would have been justified in assuming that Miss Aufder-

Heide, or the interests represented by her, had decided to abandon the idea of a repurchase. In any event, J. L. Blackshare had no notice of the agreement and same was not binding on him.

We, therefore, conclude that the decree is correct, and it is accordingly affirmed.