ALTHEIMER v. BOARD OF DIRECTORS OF PLUM BAYOU LEVEE

DISTRICT.

Opinion delivered May 28, 1906.

1. LEVEE DISTRICT—LIMIT OF INDEBTEDNESS.—Ch. 31, Acts 1905, providing that the board of directors of the Plum Bayou Levee District should levee the Arkansas River front so as to protect the property in the district,. and authorizing the issuance of bonds in the sum of $300,000, intended that the levee should be constructed, and that the lands of the district should be bound for the cost thereof, whether the cost exceeded the amount of money the board of directors was expressly authorized to borrow or not. (Page 232.)

2. SAME—ISSUANCE OF EVIDENCE OF INDEBTEDNESS.—The general statute prohibiting the issuance by levee districts of bonds, notes or other evidences of indebtedness applies only to districts. formed under that statute, and not to districts formed under special statutes. (Page 236.)

3. SAME.—A levee board, having special authority to issue negotiable bonds in the sum of $300,000, bearing six per cent. interest, will not be authorized to issue bonds or other negotiable obligations for any purpose in excess of that sum or rate of interest, but will be authorized to contract debts in excess thereof in the necessary cost of constructing and maintaining the levee, and to execute non-negotiable written evidences of indebtedness contracted for such purposes, stipulating the dates of payment and bearing not exceeding six per cent. interest. (Page 234.)

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; reversed.

*Bridges & Wooldridge,* for appellant.

1. If the levee board has power to issue the evidences of indebtedness, it must be derived from the special act. The general act forbids the issuance of the kind of bonds or evidences of indebtedness in question. Kirby's Digest, § § 4962, 4963. The general and the special acts will be construed together, unless there is some provision in the latter expressly or by implication repealing the prohibition in the former. 73 Ark. 541; 71 Ark. 137. The provision in the special act that the directors may do all other acts not inconsistent with the laws of this State (Acts 1905, § 2, p. 86), leaves the general act in force, except where the new act makes contrary provisions.

2. All statutes authorizing additional burdens and liabilities upon property must be strictly construed. 59 Ark. 356; 71 Ark. 561.

3. The act expressly provides for bonds to the extent of $300,000, with no provision for any amount in excess thereof. It pledges the whole revenues of the district for the payment of this amount. Acts 1905, 104, § 26.

4. The courts can not construe statutes to subserve convenience or relieve from hardship. 59 Ark. 244; 65 Ark. 532.

*White & Altheimer,* for appellee.

1. The question is, can the district, a corporation, issue warrants, or evidences of indebtedness to pay for work for which it has contracted, in addition to the bonds issued? The levee district, while a corporation created by the Legislature, is in the same class as a private corporation. 59 Ark. 513.

2. All corporations have such powers as are expressly conferred by their articles of incorporation, and such implied powers as are necessary to carry out the purposes and objects of the powers expressly conferred by the articles of incorporation. Cook on Corp. (5 Ed.), § 3; 173 U. S. 111.

3. Sec. 3 of the act defines the object and purposes of the district, and sec. 2 authorizes the board to do all other acts and things not inconsistent with the laws of the State which may be proper to carry into effect the purposes and objects of the act. It was necessary to borrow money to pay for the work, which the

corporation had the right to do. Cook on Corp. (5 Ed.), § 760. The warrants now sought to be issued stand in the same category with notes issued by a private corporation, not secured by deed of trust upon its property, which it has the right to issue. *Ib.*

4. Sections 26 and 16, when taken together, show that the corporation is given both the express and implied power to borrow such sums of money as become actually necessary to carry into effect the purposes for which it was incorporated.

5. The amendatory act clearly shows that the bonds were merely intended to be fixed as a first lien upon the property in the district, and that other debts were contemplated. Sec. 1, amendatory act. Even if the act limited the corporation to the borrowing of $300,000, yet, as the contract was made and the debt incurred for the purpose of carrying out the object and intention of the act, the district is liable for such sum as may be expended in excess of the $300,000. Cook on Corp. (5 Ed.), § 760; 173 U. S. 111.

McCULLOCH, J. This is a suit in equity brought by M. L. Altheimer, a tax payer of Plum Bayou Levee District, for the purpose of restraining (1) the execution of negotiable promissory notes by the Plum Bayou Levee District to evidence the balance owing for work done in constructing the levees, after money available for such payments had been exhausted; (2) to restrain the issuance and sale of certificates of indebtedness of the levee district for the purpose of raising money to pay the balance due for levee construction, and (3) to restrain the levying of a tax to pay the balance due for levee construction.

It is alleged in the complaint that the board of directors has entered into a contract for construction of the levee at a cost in excess of the levee taxes for the current year and the proceeds of the sale of bonds of the district in the sum of $300,000 authorized by statute to be issued; that the board is about to execute negotiable promissory notes of the district bearing interest at 8 per cent. per annum to the contractors for levee work done under contract, and that the board will also, unless restrained, issue and sell certificates of indebtedness of the district in the form of notes maturing at long time and bearing interest at from 6 to 8 per cent. per annum for the purpose of raising funds to pay the amounts due and to become due to contractors for levee work.

The chancellor sustained a demurrer to the complaint, and the plaintiff appeals.

The act of the General Assembly establishing the Plum Bayou Levee District expressly authorized the board of directors to borrow money and issue bonds of the district to the extent of the sum of $300,000 for the purpose of constructing and maintaining the levee. It prescribes in detail the form, terms and maximum rate of interest of such bonds and the manner in which the same should be sold, and pledges the revenue of the district arising from any and all sources to the payment of the bonds and interest. Acts 1905, c. 31.

Bonds of the district aggregating the sum of $300,000 have been issued and sold and the proceeds expended, leaving the levee incomplete, and it is contended on behalf of appellant that the power of the board of directors to create obligations of the district or to issue evidences of indebtedness for the construction of the levee is by the statute limited to the amount of the authorized bond issue.

The question turns largely upon a construction of the terms of the statute establishing the levee district, defining its object, and authorizing the construction of the levee.

The controlling purpose of the lawmakers in creating the district was to provide for the construction of a levee sufficient to protect the lands situated within its limits from overflow, and the authority to borrow money and issue bonds to the amount of $300,000 was conferred as a means to accomplish that end. The statute provides in the broadest terms that "the board of levee directors shall have power, and it is hereby made their duty, to levee the Arkansas River front * · * * so as to protect the property in the district above named, and to protect and maintain the same in such effective condition as honest, able and energetic efforts on their part may obtain, by building, rebuilding, repairing or raising levees on the bank of the Arkansas River, or such other places as the board may select." Full power is conferred upon the board to determine the height and other proportions of the levee, and to exercise the right of eminent domain in condemning private property for right of way. In the very nature of things it was impossible for the lawmakers to determine in advance the precise or even approximate cost of constructing and

maintaining the levee. This was necessarily left to the judgment and discretion of the directors, when the plans were matured and the work progressed. We can not presume that the framers of the statute meant to set a limit upon the power of the board as to the cost of the levee, or that they intended to impose a condition upon the construction and maintenance of the levee that the cost should not exceed $300,000, or that the work should cease when that sum should have been expended, and that the construction should be delayed until the revenues of the district should afford sufficient funds to complete it. There is nothing in the act to manifest such an intention, especially when we consider the duty imposed upon the directors in mandatory terms to build a levee "so as to protect the property in the district above named.'

We think it is clear that the Legislature meant to provide for the building and maintenance of a levee sufficient to protect the real property in the district, and that the cost thereof was not limited to the amount of money which the directors were authorized by the statute to borrow and to issue bonds to cover. The primary duty and power of the board of directors is to cause the levee to be constructed, and the power to bind the district for the payment of the cost thereof necessarily follows, whether it exceeds the amount of money the board is authorized to borrow or not. The limitation upon the power to borrow money and issue bonds does not restrict or impair the powers to construct and maintain the levee and to contract debts in the performance of that duty. *Hitchcock* v. *Galveston*, 96 U. S. 341.

The board, therefore, having the power to contract debts for the construction of the levee, it may also issue written evidences of the indebtedness to the creditors of the district. Such writings do not enlarge the liability of the district, but only evidence the liability. *Merchants Nat. Bank.* v. *Citizen's Gas Light Co.*, 159 Mass. 505; *Williamsport* v. *Commonwealth*, 84 Pa. St. 487. "The power to contract a debt," says the Pennsylvania court, "carries with it by necessary implication the right to give appropriate acknowledgment of such debt, and to agree with the creditor as to the time and mode of payment; that, in the absence of any statutory provision, there is no rule of law limiting the extent of the credit."

And the board of directors, recognizing the condition which

the lawmakers who framed the statute must have had in mind, that the revenues of the district were collectable annually and the cost of construction might exceed the taxes for the current year, have the power to stipulate with the creditor for a future date of payment of the debt, so as to conform to the ability of the district to discharge the obligation, and also to stipulate for the payment of interest at the legal rate of six per cent. per annum for the forbearance. In other words, to execute to creditors of the district promissory notes for the amounts due, payable with interest at six per cent. per annum at such future times as the parties should agree upon. This would not enlarge the liability of the district, as the power to contract for the payment of interest on deferred payment may be fairly implied from the statute making it the duty of the board to construct the levee.

The act establishing the district does not prohibit the execution of such written evidence of the obligation of the district, and the general statute (Kirby's Digest, § 4963), prohibiting the issuance by levee districts of bonds, notes or other evidences of indebtedness, applies only to districts formed under that statute, and has no application to this district, which was established by special statute.

But the power to borrow money for any purpose in excess of the sum expressly authorized by the statute, or to issue bonds or other negotiable obligations of the district, or to contract for a greater rate of interest than six per cent. per annum on deferred payments of debts of the district stands upon a different footing. The authority to do so must be found in the statute whereby the district is established and its objects and powers defined, else it does not exist at all. It can not be implied from the power to construct the levee. We are cited by learned counsel for appellee to cases holding that powers conferred upon a municipal corporation to contract debt implies the power to borrow money on its obligation to pay the debt. 1 Dill. Mun. Corp. § 117; *State* v. *Babcock,* 22 Neb. 618. Even if we conceded that the principle stated is sound when applied to power of municipal corporations, it is not applicable to levee district boards and like bodies which are called into being to perform a specific function, and no other, and whose powers must be found in the strict letter of the law which creates them. Such an agency of government is *sui*

*generis,* and its powers can not be likened to those of municipal corporations, whose powers are broader and more general within their prescribed territory and over the subjects delegated to them. They exercise no governmental powers except those expressly granted by the legislative authority which called them into existence, and then only in the manner pointed out expressly or by fair implication.

Moreover, the statute expressly provides that "said board of directors shall have power to borrow money, and to that end may issue bonds of said board to the amount of not exceeding $300,000 payable in lawful money of the United States," etc. This is clearly a limitation upon the power of the board to borrow money as well as to issue bonds. *Expressio unius est exclusio alterius.* If the board had the power otherwise to borrow money or issue bonds and other negotiable evidences of indebtedness, it was unnecessary to specially confer that power to the extent of the limited amount named.

We therefore hold that the board of directors are not empowered to borrow money or issue bonds or other negotiable obligations for any purpose in excess of $300,000, or to enlarge the liability of the district by a contract to pay interest in excess of six per cent. per annum for forbearance, but that the board is empowered to contract debts in excess of $300,000 in the necessary cost of constructing and maintaining the levee according to the expressed purpose in establishing the district, and also to execute written evidences of indebtedness contracted for such purposes, stipulating dates of payments and bearing six per cent. interest.

The chancellor erred in sustaining the demurrer to that part of the complaint which sought to restrain the board of directors from exceeding its powers as herein stated.

The decree is therefore reversed, and the cause remanded with directions to overrule the demurrer and for further proceedings not inconsistent with this opinion.

BATTLE, J., dissents as to so much of the opinion as holds that the board of directors can not contract for interest exceeding the rate of six per cent. per annum.