## MEEK *v.* CHRISTIAN.

Opinion delivered March 23, 1925.

1. HIGHWAYS—LEGISLATIVE ASSESSMENTS OF BENEFITS.—A statement in Sp. Acts 1920, No. 51, § 5, that all the land within a proposed road improvement district would be benefited to the extent of 10 per cent. of the value as assessed for State and county taxes was an arbitrary assessment, and did not authorize a contract for final plans and supervision of the work, since no local improvement can be undertaken without first ascertaining that the special benefits to the land equal or exceed the cost of the improvement.

2. HIGHWAYS—EMPLOYMENT OF DISTRICT ENGINEER—VALIDITY OF CONTRACT.—The contract of a highway district employing an engineer to make preliminary plans and estimates and to make final plans and supervise construction, for which he was to receive a percentage of the cost of improvement, was not separable, and, the preliminary work only being authorized

until by final assessment of benefits it was known that the commissioners had power to make the improvement, the contract never became effective, where no final assessment of benefits was ever made, and on abandonment of the project the engineer's recovery was limited to a *quantum meruit* for the preliminary work.

3.   HIGHWAYS—PRELIMINARY WORK—CERTIFICATE OF INDEBTEDNESS. —Where certificates of indebtedness issued to a highway district engineer for preliminary work never became effective because no assessment of benefits was ever made, the assignees thereof could not recover on them on abandonment of the district.

4.   HIGHWAYS—EMPLOYMENT OF ENGINEER—RIGHT OF RECOVERY.— Where engineer was employed by a road improvement district to prepare preliminary and final plans, and the contract was ineffective because it included the final plans, no assessment of benefits having been made on abandonment of the project after the preliminary plans had been accepted, the engineer was entitled to the reasonable value of his services in the preliminary work.

5.   HIGHWAYS—VALUE OF ENGINEER'S SERVICES—EVIDENCE.—Evidence *held* to show that the amount of certificates of indebtedness issued by a highway district to an engineer under an invalid contract represented fair and reasonable compensation for his services in making preliminary plans and estimates.

6.   HIGHWAYS—COMPENSATION OF ENGINEER—INTEREST.—In an action on a *quantum meruit* for the value of an engineer's services in making a preliminary survey under a contract which never became effective, it was error to allow interest on the certificates of indebtedness issued to him from the time of their issuance, though they were found to represent the reasonable value of his services on a *quantum meruit*.

7.   HIGHWAYS—COMPENSATION OF ENGINEER—INTEREST.—Where the commissioners of a highway district and the engineer were unable to agree upon the value of his services in making a preliminary survey, and he filed a claim therefor in a proceeding to wind up the affairs of the district, he was entitled to interest on the amount allowed him from the date of filing the claim.

8.   HIGHWAYS—POWERS OF COMMISSIONERS.—Improvement district commissioners exercise no powers except those expressly granted by the Legislature, and only in the manner pointed out expressly or by implication.

9.   HIGHWAYS—POWER OF ROAD DISTRICT TO ISSUE NEGOTIABLE PAPER. —Acts of Sp. Sess. 1920, No. 51, § 3, giving to the commissioners of a certain road improvement district power to employ engineers to make a preliminary survey, by necessary implication

authorized them to issue certificates of indebtedness therefor, but not to issue negotiable paper.

Appeal from Miller Chancery Court; *C. E. Johnson,* Chancellor; modified.

### STATEMENT OF FACTS.

Appellants prosecute this appeal to reverse a decree in favor of appellee, C. S. Christian, for services performed in surveying and making the plans, specifications and estimate of cost for a special road improvement district in Miller County, Arkansas.

The General Assembly of the State of Arkansas, at its special session in 1920, passed act No. 51 to create the South Miller County Highway District, and the act was approved February 4, 1920. The territory embraced in the act comprised the whole of the south half of Miller County, Arkansas, including the city of Texarkana and a part of the territory embraced within the boundaries of Miller County Highway and Bridge District. The roads which it is proposed to improve are described in a general way in § 1 of the act.

Section 2 provides that if any of the roads proposed to be improved have not been laid out as public roads, it is made the duty of the county court to lay out the same in accordance with our general statute relating to the establishment and change of public roads in this State.

Section 3 provides that the commissioners may employ such engineers, attorneys and agents as they find advantageous, and fix their compensation.

Section 4 makes it the duty of the commissioners to proceed as rapidly as possible with the proposed improvement, which is to improve the roads named in the act by grading and draining them and surfacing them with gravel. The section also provides that the commissioners shall form their plans for the proposed improvement, and shall file the same with the county clerk of Miller County with the specifications and an estimate of the cost. This section also gives the commissioners the power to vary the line of existing public

roads for the purpose of straightening them or for economy in the construction of the improvement. It is made their duty to report their recommendations in this respect to the county court, and it is made the duty of the county court to approve the change in the route and to lay out the new roads, if it approves the report of the commissioners.

Section 5 provides that all real property subject to taxation within the corporate limits of the city of Texarkana and all that portion of the proposed district which lies within the boundaries of the Miller County Highway & Bridge District will be benefited by the improvement to the extent of 10 per cent. of the assessed value of each parcel of said real property as assessed for State and county taxes for the year 1919.

The section further provides that it is ascertained and declared that all land within the district will be benefited at least to the extent of the cost of the proposed improvement, and that the amount of benefits to each tract of land outside of the corporate limits of the city of Texarkana and outside of that portion of the district lying within the boundaries of Miller County Highway and Bridge District will be ascertained by an assessment of benefits to be made by a board of assessors to be appointed under the act.

Pursuant to this act, the commissioners employed C. S. Christian to make a survey of the roads proposed to be improved and to prepare plans and specifications and the estimated cost of improving the same, and on the 9th day of March, 1920, entered into a written contract whereby they agreed to pay him 4 per cent. of the estimated cost of the proposed improvement for his services. The contract provides that he shall make all preliminary and final plans and supervise all the construction work. The contract provides in detail for the services of the engineer with regard to the preparation of the plans, specifications and estimate of cost of improving the roads under the act. C. S. Christian entered into

the prosecution of his work, and caused a survey of the roads proposed to be improved to be made, and prepared and filed under the provisions of the act plans, specifications, and an estimate of the cost thereof. His report is in detail, and shows that the total length of the roads to be improved is 113.214 miles; and that the total cost, including overhead expenses, is estimated to be $1,511,900.97.

The commissioners approved the report of the engineer, and on January 21, 1921, issued certificates to said engineer in the total sum of $27,489.10. The certificates bear interest at the rate of 6 per cent. per annum from date until paid. Opposition developed among the landowners to the construction of the proposed improvement, and the county court refused to approve the plans and specifications with the estimate of cost of improving said roads, and also refused to approve the changes in the roads suggested by the commissioners. In fact, the county court disapproved the act of the commissioner's in entering upon the construction of the proposed improved roads. On the 26th day of September, 1922, thereafter, the commissioners passed a resolution in which they stated the advantages to be derived from the proposed improved roads, and called attention to the objections made to the construction of the same. A resolution was adopted by the board of commissioners that, under existing conditions, it would be to the best interest of the landowners for the affairs of the district to be wound up without constructing the proposed improved roads, and provisions for the payment of its outstanding obligations be made.

On the 4th day of October, 1922, the commissioners filed a petition in the chancery court for the purpose of winding up the affairs of the district, and calling upon all claimants to file their claims. On the 16th day of October, 1922, Oscar Meek and other landowners in the district were allowed to become parties to the proceeding.

C. S. Christian sold and assigned the certificates of indebtedness issued to him. On the first day of Febru-

ary, 1922, the First National Company of St. Louis, Mo., purchased said certificates from C. M. Conway for the sum of $28,161.66. On January 20, 1923, the said First National Company filed its claim against said district in the chancery court, asking that it be allowed the sum of $27,489.10, the face of the certificates, and interest thereon at the rate of 6 per cent. per annum from the date of issuance, to-wit, January 21, 1921, until paid.

On February 9, 1923, an act repealing the act creating South Miller County Highway District was approved. Special Acts of 1923, p. 126.

Evidence was introduced by the First National Company of St. Louis, Mo., to establish the validity of its claim, and the taxpayers introduced evidence tending to show that no recovery should be allowed on the certificates, and that the claim should only be allowed upon a *quantum meruit.*

The testimony on both sides on this branch of the case will be set out and reviewed in the opinion. In this connection it may be stated, however, that three assessors were appointed as directed by the act to make an assessment of benefits, but it does not appear from the record that they ever made or filed any assessment of benefits under the provisions of the act.

The chancellor made a finding that there was not sufficient evidence to impeach the justice of the allowance of $27,489.10 made by the board of commissioners to C. S. Christian. It was therefore decreed that the First National Company of St. Louis, Mo., the holder of the certificates, be given judgment against the district for the face value thereof, with 6 per cent. interest per annum from January 21, 1921, until paid. The case is here on appeal.

*Jas. D. Shaver, John N. Cook* and *W. H. Arnold, Jr.,* for appellants.

*Henry Moore, Jr., Webber & Webber, Chauncey H. Clark, Rose, Hemingway, Cantrell & Loughborough, James D. Head* and *Paul Jones,* for appellees.

HART, J., (after stating the facts). It is first sought to uphold the decree of the chancery court on the ground that the holders of the certificates issued to C. S. Christian were entitled to recover the face value thereof and the accrued interest. It is claimed that there was a legislative assessment of benefits, and that, in making the same, the lawmakers are presumed to have had before them information as to the cost of the construction of the proposed roads according to the plans and specifications within the rule announced in *Summers* v. *Cole,* 144 Ark. 494, and other decisions of this court. Therefore it is claimed that the case is brought within the principles decided in *Bowman Engineering Co.* v. *Ark. & Mo. High. Dist.,* 151 Ark. 47. We do not agree with counsel in this contention. We have given a synopsis of the provisions of the special act creating the road improvement district, so far as is necessary to determine the issues raised by this appeal. It is true that the Legislature declared that all the land within the proposed district would be benefited at least to the extent of the cost of the improvement. Conceding that the Legislature is presumed to have had before it information as to the cost of the construction of the proposed improvement, still it could not know that the land in the district would be benefited at least to the extent of this cost without making a legislative assessment of benefits. In other words, even if it should be presumed that the Legislature knew the cost of the proposed improvement, it could not know the extent or amount of the benefits to the land within the district without making an assessment thereof. Its action in declaring the benefits are equal to the costs of the improvement, without ascertaining what the benefits were, amounted to nothing more than an arbitrary finding on its part, and cannot be sustained by the court. It is well settled that no local improvement can be undertaken without first ascertaining that the special benefits to the land equal or exceed the cost of the improvement.

But it is contended that the Legislature made an assessment of benefits. Reliance is placed upon § 5 of the act, which provides that all real property in the district within the corporate limits of the city of Texarkana, and all that portion of the district which is incorporated in and lies within the boundaries of Miller County Highway and Bridge District, will be benefited by the improvement to the extent of 10 per cent. of the assessed value for State and county purposes for the year 1919 of each parcel of said property. This was only a partial assessment of benefits by the Legislature.

The record shows that the land within the boundaries of Miller County Highway and Bridge District, for the most part, includes the north half of Miller County, and the land within the South Miller County Highway District is situated chiefly in the southern part of Miller County. The city of Texarkana is included in both districts, and a part of the land within Miller County Highway and Bridge District is also included in the South Miller County Highway District. Now the assessment of benefits on the land not situated in the city of Texarkana nor in Miller County Highway and Bridge District was not included in the assessment of benefits made by the Legislature. Thus it will be seen that the greater part of the land in the proposed district is situated without the boundaries of the city of Texarkana and outside of the boundaries of Miller County Highway and Bridge District, and no assessment of benefits on it was made or attempted to be made by the Legislature.

On the other hand, the act provides that assessors shall be appointed to make such assessment of benefits. The record shows that assessors were appointed for that purpose as provided by the act, but it does not show that any assessment of benefits was ever made by them. It is certain, then, that no complete or final assessment of benefits was ever made as contemplated in the act.

The commissioners of the district made a contract with C. S. Christian to do all the engineering work for

the district. The contract, by its express terms, includes the work of making the preliminary as well as the final survey of the roads proposed to be improved under the terms of the act creating the district. The contract includes the work of making detailed plans, specifications, and an estimate of the cost of making the proposed improvement. The contract further provides that the engineer shall receive for all of his services 4 per cent. of the cost of the improvement, and that one-half of this shall be paid upon the completion of the plans, specifications and estimate of cost.

In *Morgan Engineering Co.* v. *Cache River Drainage District,* 115 Ark. 437, and other cases, we have uniformly held that contracts of this sort, providing for the payment of a specified part of the engineering fee upon the completion of the preliminary survey and the filing of the estimate of cost thereof, are only a method of payment, and do not make the contract divisible or separable. It follows from the cases cited above and other decisions of this court that the contract made by the commissioners with Christian never became effective, because no complete and final assessment of benefits was ever made, and, until this was done, it could not be known whether or not the commissioners had the power to make the proposed improvement.

Therefore the facts and circumstances of this case make it certain that the engineer could only recover on a *quantum meruit* basis for the services performed by him, and the holders of his claim against the district could acquire no greater rights than he possessed. In short, if Christian could not recover on the certificates of indebtedness issued to him, it is equally certain that the assignees of his claim could not recover on them. The reason is that the contract never became effective and the certificates of indebtedness never became valid obligations of the district, and were not negotiable.

The act provides that the commissioners might employ an engineer to make a preliminary survey of the

roads proposed to be improved, and this includes the preparation of plans and specifications showing the estimated cost of the improvement. This leaves Christian with a lawful employment, but no provision in the contract for the value and time of payment of his services. The commissioners not only employed him to do the work of making the preliminary survey, plans, specifications and estimates of cost of the proposed improvement, but they actually approved and received his report of the work done by him. Therefore he is entitled to recover the reasonable value of his services within the limits of the authority of the commissioners to employ him.

Christian had an engineering party in the field for eleven months, and the engineer in charge rendered an itemized statement of the expenses thereof, which, for the eleven months, amounted in the aggregate to $21,-191.52. This aggregate amount did not include the work of making the blue-prints of the roads or preparation of the plans and specifications. During a part of this time Christian was engaged at work with the field party, and was paid at the rate of $450 per month for the time he was actually engaged at work in the field. The number of miles of final location of the proposed road was something over 113 miles. The improved roads were to be made of gravel, and the actual cost of construction was estimated to be $1,365,964.38, and the total cost, including the sodding of the shoulders of the roads and the overhead charges, amounted to $1,511,900.97. Owing to the fact that many miles of the improved roads had to be re-run for three or four times to get suitable grades, it was not practicable to give the average number of miles located each day. The roads were to be drained, graded, and surfaced with gravel. The engineer made frequent trips over the line, checking up the location and examining gravel-pits, to see whether or not they were suitable for road building. This was necessary in order to make a correct estimate of the cost of the materials which were to be used in the con-

struction of the roads.   It was necessary to cross-section·
the roads in making a preliminary survey.   This is neces-
sary in order to determine the yardage of earth required·
to be moved.·  There were about 275,000 acres of land·
included in the South Miller County Highway District.·
This includes the south half of the county, with an over-
lap on the territory embraced in the Miller County High-·
way and Bridge District.  ·      ·  ·

Acording to the testimony of C.·S. Christian, the·
·actual cost of the field work of making a preliminary
survey of the kind and character in this case is from
$200 to $250 per mile.   The cost of preparing the esti-·
mates and the profits to the engineer are not included
in this charge.   The testimony of Christian in this respect
was corroborated by that of three other engineers, who
had had considerable experience in road building and
who were familiar with the territory embraced in this
district.  One of these engineers had had several years'
experience in the employment of the United States in·
road building, and for something more than a year
before, he testified, had been State Highway Engineer
for the State of Texas.   He has also been engaged as
United States district engineer, and, as such, was·
familiar with the character of hard roads built in the·
State of Arkansas and the kind of lands embraced in·
the road district in question.   All three of these engi-
neers corroborated the testimony of Christian as to the·
expense of making a preliminary survey in a road dis-·
trict of the kind in question in this case.   They also·
testified that Christian was a high-class engineer and·
had had considerable experience in constructing hard
roads.    ·  ·  ·  ·  ·

According to the evidence of Christian, it was neces-·
sary to have made the preliminary survey in as much·
detail as he made it in order to secure Federal aid and·
to secure the approval of the State Highway Engineer·
of the State of Arkansas.   The United States would·
not grant Federal aid unless it was approved by the
State Highway Department, and unless the preliminary

survey was made in sufficient detail to enable the engineer who made it to approximately, at least, make a correct estimate of the cost of the proposed improved roads. Opposed to this evidence is the testimony of a civil engineer who thought that a preliminary survey of the proposed roads could have been made for $150 per mile. On cross-examination, he testified that it was worth 2 per cent. of the estimated cost of the improvement to make such a preliminary survey. Thus it will be seen that a preponderance of the evidence shows that the amount allowed by the court was not more than the reasonable worth of making the preliminary survey. Indeed, the taxpayers contest the allowance mainly on the ground that it was made too much in detail to constitute a preliminary survey.

We do not agree with counsel in this contention. The evidence of Christian, which is not contradicted on this point, was to the effect that it was necessary to have made the survey with as much detail as was done in order to ascertain the exact yardage of dirt to be moved, and that it was necessary to examine the road material near at hand in order to ascertain its fitness and to estimate the cost thereof. It is obvious that, if gravel would have to be hauled in from a distance, this would materially increase the cost of construction.

The act made it the duty of the commissioners to prepare plans, specifications, and an estimate of the cost of the work. They were authorized to employ engineers to assist them in doing so. It is manifest that the intention of the Legislature in requiring the plans, specifications and an estimate of the cost was to enable the commissioners to have before them definite information of the cost and entent of the proposed improvement to enable them to decide intelligently whether it should be made. Another reason would be to inform the property owners of the character and probable cost of the proposed improvement so that they might have an opportunity to remonstrate against it, if they thought that the construction of the proposed roads under the terms of

the act would prove too burdensome. Then, too, it was necessary to have a survey made of the parts of the road which it was necessary to straighten, in changing from a system of dirt roads to hard roads. This information was necessary to enable the county court to act with proper judicial discretion in approving or rejecting such changes.

We do not deem it necessary to set out in detail or to enter into a minute discussion of all the evidence in the case. It is sufficient to say that there is nothing in the record which questions either the good faith of the commissioners in contracting for the preliminary survey, or in the conduct of Christian in making it. The whole record shows that the commissioners and the engineer were actuated by a desire to ascertain as nearly as practicable the cost of the proposed improvement in advance of making any contract for constructing it. It will be readily seen that a too hasty and indefinite preliminary survey would not enable the commissioners to make an accurate estimate of the cost of the roads. Of course, they could give the landowners an estimate of the probable cost of moving earth in the proposed roads, but a detailed survey would be necessary to give even an approximately correct estimate of the amount of yardage to be moved. This could not be done without proper cross-sectioning.

Under all the facts and circumstances as they appear in the record, we think that the sum of $27,489.10 was a reasonable compensation for making the preliminary survey.

This brings us to the question of interest. As we have already seen, the chancellor erred in allowing the interest provided for in the certificates of indebtedness themselves, for the reason that no recovery can be had upon them.

In the case of *Pritchett* v. *Road Improvement Dist. No. 4,* 167 Ark. 555, the engineer was allowed to recover interest at the legal rate from the date of the filing of his claim in the circuit court. Therefore the allowance of

interest on the claim of the First National Company of St. Louis, Mo., from the time of the commencement of the suit by it was proper under the case just cited.

In adhering to the rule in regard to the interest laid down in this case, we are not unmindful of the old common-law rule, which required that the claim should be liquidated or its amount in some way ascertained, before interest can be allowed. This rule, however, has been frequently modified by the courts.

In the present case, the act creating the district allowed the commissioners to make a contract with a suitable engineer for a preliminary survey of the public roads proposed to be improved. The commissioners made such a contract with Christian, but failed to provide the amount of his compensation and the time for paying him therefor. The contract was fully performed by the engineer, and the fruits thereof were accepted by the commissioners without objection. Thus it will be seen that the district owed Christian for making the preliminary survey the reasonable value of his services. The parties were unable to agree as to the value of his services. It was the duty of the engineer to file his claim in the proceedings to wind up the affairs of the district; and it could not be certainly known what price he demanded for his services until that was done. His claim was filed on the 20th day of January, 1923, and the chancellor should only have allowed the claimant interest from that date.

Therefore the decree will be modified so as to allow the claimant to recover from the district $27,489.10 with 6 per cent. interest from January 20, 1923, and, as modified, the decree will be affirmed.

HART, J., (on rehearing). Counsel for C. S. Christian earnestly insist that the court erred in not allowing him interest from the date of the completion of his services as engineer in making the preliminary survey of the roads in the district and his plans and estimates showing the cost of the construction of the improved roads. They strongly rely upon the case of *Iron Mountain &*

*Helena Rd.* v. *Stansell,* 43 Ark. 275. In that case there was a contract between the railroad company and the construction company for the construction of defendant's line of road from Helena to Forrest City, Arkansas. The court held that the contract was a single and indivisible contract. The railroad company issued certain certificates of indebtedness for the amount it owed the construction company, which were called change tickets, and which were held to be in violation of law. Although illegal, the court held that they might be used as evidence of the amount due on the contract, inasmuch as they were a written admission that the railroad company had received the value expressed in them. Interest was allowed when the payments became due to the construction company under the contract. Thus it will be seen that the interest was contractual and followed the ordinary rule in such cases.

The facts in this case are materially different. The commissioners made an indivisible contract with Christian to do both the preliminary and construction engineering work for the district, and, under the contract, he was to receive four per cent. of the actual construction cost of all the improved roads. The contract provided that when the engineer had filed his approved plans, specifications, and estimates, then the district shall pay him fifty per cent. of the estimated entire fee. It further provided that, if the district had no funds to make such payment, then it would execute certificates of indebtedness therefor bearing interest at six per cent.

As will be seen by reference to our original opinion, this contract never became effective because no final assessment of benefits was ever made and in consequence there could be no ascertainment that the assessment of benefits would exceed the cost of the improvement.

Improvement district commissioners exercise no powers except those expressly granted by the Legislature and can exercise the powers conferred only in the manner pointed out expressly or by necessary implica-

tion. *Altheimer* v. *Board of Directors of Plum Bayou Levee District,* 79 Ark. 229.

Section 3 of the act gives the commissioners the power to employ engineers to make a preliminary survey and to prepare plans and specifications for the construction of the improved roads. By necessary implication, this would give them the authority to issue evidence of indebtedness therefor; but not negotiable paper. *Hiter* v. *Harahan Viaduct Imp. Dist.,* 165 Ark. 351. In this connection it may be stated that no attempt was made by the district to issue negotiable interest bearing certificates of indebtedness for preliminary engineering expenses; but it distinctly shows that the certificates were issued under the contract, which was for the whole of the engineering work.

The record shows that the district first made two advance payments of $10,000 each for preliminary engineering expenses. The resolution expressly recites that the advances were made under the contract which the board of commissioners had made with the engineer. A subsequent resolution of the board of commissioners recites that certificates of indebtedness had been theretofore issued to C. S. Christian in the sum of $20,000 as advances on his 2 per cent. commission due on approval of the plans, specifications, and estimates of the roads in said district. The resolution further recites that there is now due to C. S. Christian, all told at 2 per cent. on the estimated cost of the improvement, the sum of $27,489.10, less the $20,000 in certificates held by Christian.

Thus it will be seen that the certificates of indebtedness were not issued to Christian because the commissioners had agreed with him that he was due the sum of $27,489.10 upon a *quantum meruit* for making the preliminary survey and preparing the plans, specifications and estimates. On the contrary, it is manifest from the record that these certificates were issued under the contract with the engineer for doing the preliminary surveying and the construction engineering work. It will be seen, then, that the certificates were issued under a contract

which never became effective. . Therefore, Christian had. no right, whatever to recover on his contract, and the action of the commissioners in renewing the certificates under the contract did not constitute an admission that Christian was due, that sum of money upon a *quantum meruit* basis.

The record does not show that the commissioners and Christian ever took up the matter of settling his compensation upon a *quantum meruit* basis. The entire course of their dealings show that they proceeded upon the theory that he was entitled to 2 per cent. of the entire commission under his contract with the board of commissioners. Hence, there is nothing in the record whatever to show that the commissioners ever agreed that Christian was entitled to any stipulated amount upon a *quantum meruit* basis.

In this connection it may be stated that the general rule which denies the right to interest on unliquidated damages has found very frequent application in the case of unliquidated demands for services rendered, which as a general rule do not bear interest until rendition of judgment. 33 C. J., § 72, p. 211. The cases cited show that *quantum meruit* for services rendered is within the rule. The value of services upon a *quantum meruit* can only be ascertained by an accord or by the judgment of a court after hearing proof of the value of the services. The general rule does not apply here because of the statute creating the district.

Section 23 provides that, in case for any reason the improvement contemplated by the district is not made, the preliminary expenses shall be a first lien upon all the land in the district and shall be paid by the levying of a tax thereon upon the assessed value for county and State taxation. This was a direct recognition that the preliminary work was to be undertaken by the district and that its cost must be met by the landowners. As we have already seen, the commissioners could only exercise the powers granted them expressly or by necessary implication, and, having failed to enter into a separate

contract with Christian for the preliminary surveying expenses, he was only entitled to recover upon a *quantum meruit.*

Under the statute he must file his claim in the chancery court and was not entitled to interest until he filed his claim for two reasons. In the first place, the statute did not authorize the commissioners to pay him interest for preliminary work. Of course, if the contemplated improvement had been carried out and bonds for the cost of construction had been issued as provided by § 16 of the act, the preliminary expenses would have become a part of the cost of construction and the commissioners might have issued negotiable bonds bearing the rate of interest provided by the statute.

As we have just seen, § 23 of the statute creating the district provides that, in case the improvement is not made, the preliminary expenses shall be paid by the levying of a tax on the land of the district. By fair inference this means that no interest shall be due on the claims for preliminary expenses until the same are filed as provided by the act. The mere fact that § 3 gave the commissioners the power to employ an engineer to make a preliminary survey, and to prepare estimates of cost, did not by implication authorize them to pay him interest on his claim until the claim was filed as directed by statute.

It follows that the petition to modify the decree will be overruled.

WOOD, J., dissents.